# EXHIBIT "1"

## to United States' Amicus Curiae Brief

FILED IN CHAMBERS
7-16-04
Luther D. Thomas, Clerk
BY: [signature]
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | CIVIL ACTION |
| versus | NO. 1:04-CV-2040-CAP |
| THE STATE OF GEORGIA and CATHY COX, Secretary of State of Georgia, | |
| Defendants. | |

## O R D E R

This matter is now before the court on the plaintiff's motion for a temporary restraining order and preliminary injunction. For the reasons set forth below, this motion is GRANTED.

### Factual Background

The United States of America filed this action pursuant to the Uniformed and Overseas Citizens Absentee Voting Act, 42 U.S.C. § 1973ff et seq. ("UOCAVA"). UOCAVA provides, in relevant part, that each state shall "permit absent uniformed services voters and overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office" and shall "accept and process, with respect to any election for Federal office, any otherwise valid voter registration application and absentee ballot application from an absent uniformed services voter or overseas voter, if the application is received by the

appropriate State election official not less than 30 days before the election." 42 U.S.C. § 1973ff-1(a)(1)-(2). In this action, the United States seeks injunctive relief in order to ensure that overseas voters who filed timely applications for absentee ballots and are, therefore, protected under UOCAVA will have an opportunity to vote and to have their ballots counted in Georgia's federal primary elections, to be held on July 20, 2004, and in any federal primary runoff elections to be conducted on August 10, 2004.[1]

The State of Georgia is charged with the responsibility of assuring that the state's election laws, as applied, comply with federal law, including the provisions of UOCAVA. Secretary of State Cathy Cox is the chief election officer of the State of Georgia and, as such, is responsible for the administration of state laws affecting voting and for assuring that elections in the state are conducted in accordance with the law. See O.C.G.A. § 21-2-50.

The parties agree on the relevant facts in this matter. The State of Georgia is conducting its federal and state primary elections on July 20, 2004, and will conduct any necessary primary runoff elections on August 10, 2004. The federal and state general elections will then be held on November 2, 2004, and any necessary runoff

---

[1] Pursuant to § 1973ff-4 of the statute, "[t]he Attorney General may bring a civil action in an appropriate district court for such declaratory or injunctive relief as may be necessary to carry out this subchapter."

elections will be held on November 23, 2004. Under Georgia law, absentee ballots sent from overseas voters must be received by the close of the polls on the day of the election in order to be counted for either federal or state offices. See O.C.G.A. § 21-2-386(a)(1). Thus, in this case, the deadline for receipt of absentee ballots in the primary elections is 7:00 p.m. on July 20, 2004, and the deadline for receipt of absentee ballots in the primary runoff elections is 7 p.m. on August 10, 2004.

County election officials in the state have received timely requests for absentee ballots from a number of overseas voters who are entitled to vote for federal offices under UOCAVA. At issue now is the question of whether those voters have sufficient time in which to receive and cast their ballots for federal offices and, if not, what remedial relief the court should order to preserve their statutory rights.[2]

After this court struck down the state's previous state house and senate reapportionment plans, see Larios v. Cox, 300 F. Supp. 2d 1320 (N.D. Ga. 2004), and subsequently adopted interim plans for use in the upcoming elections, see Larios v. Cox, 314 F. Supp. 2d 1357 (N.D. Ga. 2004), the court issued an order altering the deadline provided in O.C.G.A. § 21-2-384(a), so that Georgia's counties would be

---

[2] UOCAVA only pertains to federal, and not state, offices. However, in a separate motion filed by the Secretary of State in Larios v. Cox, Civil Action No. 1:03-CV-693 (N.D. Ga.), the Secretary asks that the same protection be extended to overseas voters casting ballots for state offices.

required to issue absentee ballots by 30 days prior to the July 20 primary, rather than the 45 days provided by statute. See Larios v. Cox, Civil Action No. 1:03-CV-693 (N.D. Ga. March 30, 2004). The Secretary of State recently discovered that a number of counties were unable to meet this deadline and that absentee ballots in some counties were sent out as late as July 8, 2004. As a result, both the Secretary of State and the United States have expressed concerns that the late mailing of absentee ballots may not leave overseas voters protected by UOCAVA with sufficient time to receive, execute, and return their ballots before the July 20, 2004 deadline. The United States has also indicated that similar problems are likely to arise with any necessary runoff elections, as there is only a three-week window between the primary elections and the primary runoff elections.

## Legal Analysis

A district court may grant preliminary injunctive relief where the movant establishes that (1) it has a substantial likelihood of success on the merits, (2) it will suffer irreparable harm unless the injunction is issued, (3) the harm it will suffer in the absence of an injunction outweighs the possible harm suffered by the opposing party if the injunction is issued, and (4) an injunction will not disserve the public interest. Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d

4

1242, 1246-47 (11th Cir. 2002). It is well established in the Eleventh Circuit that "a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to all four elements." Horton v. City of St. Augustine, 272 F.3d 1318, 1326 (11th Cir. 2001) (citation and quotation marks omitted).

The court does not doubt, and the parties do not disagree, that these elements have been satisfied in this case. The United States is likely to prevail on its claim that the State of Georgia is in violation of UOCAVA, as several counties were not able to send absentee ballots in a timely manner so as to ensure that those protected by the statute would have time to receive them, execute them, and send them back to county election officials before the election deadlines. The United States has also established the necessary irreparable injury, in that many overseas voters will be unable to cast their ballots in time for their votes to be counted in the federal primary elections and, because of the short time period between the primary and the primary runoff, will almost certainly be unable to cast their ballots in time for their votes to be counted in the federal primary runoff elections. This threatened injury clearly outweighs the possible injury the injunction may cause to the State of Georgia and the Secretary of State, particularly as these parties agree that some remedies are needed in order to protect the affected voters. Finally, the public interest favors the grant of an

5

injunction.   Therefore, the court concludes that the United States is entitled to injunctive relief.

However, because injunctive relief is an extraordinary remedy, the court will exercise its power only as necessary to remedy the established harm.  The court recognizes the importance of preserving citizens' fundamental right to cast their votes in elections and to have those votes counted.  However, this concern must be balanced against the need to protect against voter irregularity and the recognition that enhancing all citizens' ability to vote in the November general elections, for which a higher voter turnout is expected, requires that the primary elections be conducted and concluded in a timely manner, leaving ample time for any ballot recounts and for the printing of ballots to be used in the general elections.

## Conclusion

Accordingly, the court hereby GRANTS the plaintiff's motion for a temporary restraining order and preliminary injunction and ORDERS as follows:

The following relief is ordered to address the delay in issuance of UOCAVA covered absentee ballots[3] for the July 20, 2004 Primary Election.  Additionally, the

---

[3] A UOCAVA-protected ballot from military personnel, their dependents or other qualified citizens is one where such a voter's absentee ballot application was received by the appropriate State election official not less than 30 days before the election. 42 U.S.C. § 1973ff.

6

same relief provided herein shall also be applicable as to all UOCAVA-covered overseas voters for the August 10, 2004 Primary Runoff Election, regardless of when the voter's application is made.

## A.    Facsimile Ballots

The Georgia Secretary of State and the registrars of Georgia's 159 counties are given the authority to send requested ballots to voters by facsimile transmission or email and to accept the returned of voter oaths and voted ballots to a single secure facsimile machine that is under the supervision of the Secretary of State. The Secretary shall promptly place each ballot received via facsimile in a sealed unmarked envelope and place that envelope within a second envelope containing the voter's oath. The Secretary shall then immediately transmit the ballots by overnight or personal deliv ery to the election superintendent in the appropriate county for verification and counting with all other absentee ballots. Transmission of returned voted ballots under this order may be made directly from the voter via facsimile, or may originate as image files sent via electronic mail to the Federal Voting Assistance Program's read-only computer facilities and then relayed to the Secretary via facsimile. In duplicating the received facsimiles of the ballots for purposes of permitting those ballots to be read by the appropriate counting equipment, the county

election officials shall use the duplication of ballot procedures and the vote review panel as described in state law in order to assure the integrity of the ballot duplication process.  O.C.G.A. § 21-2-483.

Any such ballot returned via facsimile to the Secretary prior to 7:00 p.m. Eastern Daylight Time on July 20, 2004, shall be tabulated and incorporated into the final certified tally of results.  Ballots received by the Secretary after 7:00 p.m. on July 20 shall  be kept unopened, and preserved in the manner specified by state law. O.C.G.A. § 21-2-386 (a) (1).

B.     Use of the Federal Write-In Absentee Ballot

Congress has provided for a write-in absentee ballot form for use by UOCAVA-protected overseas voters desiring to vote in Federal general elections. 42 U.S.C. § 1973ff-2. The criteria for use of this form under UOCAVA are:

1.     The voter must be located overseas;

2.     The voter must have applied for the absentee ballot

at least 30 days before the election; and

3.     The voter must not have received the requested ballot.

42 U.S.C. § 1973ff-2(a)(1-3).

Congress has made no provision for the use of this Federal Write-In Absentee ballot (FWAB) in primary elections. However, this form has the notable advantage of wide availability; federal law requires that it be available to UOCAVA-covered overseas voters, and the form is on hand at U.S. military installations and diplomatic facilities worldwide, as well as on the World Wide Web, so that UOCAVA-covered overseas voters have access to the form regardless of their location.

This court therefore orders that the Secretary make this form available via her agency's website, www.sos.state.ga.us, along with information about the candidates on the July 20 primary ballot for each political party for each office, including all of the federal offices and the statewide state-level offices. These federal write-in ballot forms may then be used by the eligible UOCAVA-protected overseas voters to vote in Georgia's primary election in the manner described above for other facsimile ballots, or in the manner described below for ballots sent via express mail, and subject to the same time restrictions applicable under this order to ballots sent by each method.

### C.    Extending the Deadline for Receipt of Mailed Absentee Ballots

Under Georgia law, in order for an absentee ballot to be properly received and counted, it must be received by the county voter registrar by 7:00 p.m. on Election

9

Day. O.C.G.A. § 21-2- 386. Because of the delay in the mailing out of the requested absentee ballots, the deadline for receipt of absentee ballots mailed back to the various Georgia counties shall be extended by three business days, so that absentee ballots from the eligible UOCAVA-covered overseas voters mailed on or before July 20, 2004, and received by the appropriate voter registrars in the issuing counties by 5:00 p.m. Eastern Daylight Time on July 23, 2004, will be deemed valid and will be tabulated and incorporated into the county's final certified results. Ballots received after that date and time will be kept unopened, and preserved in the manner specified by state law. O.C.G.A. § 21-2-386 (a) (1).

### D.     Other Means of Express Delivery

The Secretary shall make available to the eligible UOCAVA-protected overseas voters an account with Federal Express and an account with United Parcel Service (UPS) by which absentee ballots may be returned to her or to the appropriate county election officials by 5:00 p.m. on July 23, 2004, three days after the primary election. The Secretary and the State shall bear the cost of such transmittals, and shall immediately convey these ballots to the appropriate county officials by overnight or personal delivery. Information regarding access to these accounts will be made

available through the Federal Voting Assistance Program and the Office of the Georgia Secretary of State.

### E. Deadlines and Delivery Methods for the Primary Runoff Election

Georgia will conduct its runoff primary elections on August 10, 2004. The court directs that the same methods for transmittal and delivery of UOCAVA-protected overseas voters' absentee ballots shall be utilized by the Secretary and the registrars of Georgia's 159 counties for the primary runoff election. As with the primary election, the court orders that ballots voted prior to the closing of the polls at 7:00 p.m. Eastern Daylight Time on August 10, 2004, may be received and counted by the Secretary of State and the various county registrars if they are received in either of these offices by the close of business at 5:00 p.m. on Friday, August 13, 2004, via U.S. Mail or overnight delivery. As previously ordered, all ballots transmitted via facsimile to the Secretary must be received by 7:00 p.m. on the day of the runoff election, August 10, 2004, in order to be accepted and counted.

### F. Notice of Relief to Affected Voters

The defendants shall notify the Director of the Federal Voting Assistance Program ("FVAP") of the United States Department of Defense as soon as this order has been signed and request that the FVAP take such action as is necessary to notify

the eligible overseas voters of the relief afforded in this order, including the extension of time for receipt of absentee ballots. The defendants shall assist the FVAP in whatever way may be reasonably necessary to aid that agency in publicizing this extension of time.

In addition to the publicity described in the preceding paragraph, the defendants shall take the following steps to endeavor to give affected voters notice of the contents of this order:

1.  Issue a press statement for immediate release, posted immediately on the Georgia Secretary of State's Web site, and distributed as broadly and immediately as practicable to national and local wire services, to radio and television broadcast stations within the State, and to daily newspapers of general circulation in the State, describing this order, advising the press of its newsworthiness, and specifically giving members of the press a way to contact senior officials of the Georgia Elections Division for answers to questions.

2.  Prepare and distribute written public service announcements describing this order for broadcast on radio and television networks, including but not limited to the U.S. Armed Forces

12

Network, and announcements describing this order on World Wide Web sites of interest to military and non-military U.S. citizens living abroad.

3.  For the primary runoff election of August 10 only, publish paid advertisements describing this order and the relief afforded therein in at least a single day's issue of all international and domestic editions of the International Herald Tribune, USA Today, Stars & Stripes, the Army Times, the Navy Times, the Air Force Times and the Marine Times.

4.  Direct the county voter registrars and election superintendents to make all reasonable efforts, including the use of all available public records and personal knowledge, to locate each UOCAVA-covered overseas voter in their jurisdiction whose absentee ballot was issued on or after June 23, 2004; to notify each such voter individually, by electronic mail, telephone or facsimile, of the relief contained in this order; and to offer electronic or other means faster than traditional mail service of transmitting or re-transmitting an absentee ballot to each such voter.

13

G.    Report of Compliance

Within 50 days after August 10, 2004, the defendants shall file a report with this court with respect to the July 20 primary election and the August 10, 2004, primary runoff election if such an election is held, which reports sets forth the following information:

1.    The dates on which each of the 159 counties in the State of Georgia began and completed the process of mailing ballots to overseas voters, as defined by UOCAVA, for each election;

2.    The number of valid absentee ballots received by each county by the close of the polls on July 20, 2004, from such voters at that election, and the number received by each county by the close of the polls on August 10, 2004, from such voters at that election, and the means by which each ballot was received;

3.    The number of absentee ballots, by county, received and counted after the close of the polls on July 20, 2004, but prior to 5 p.m. on July 23, 2004, from such voters at the July 20 election, and the number of such ballots, by county, received and counted after the close of the polls on August 10, 2004, but prior to 5 p.m. on

14

August 13, 2004, from such voters at the August 10 runoff, and the means by which each ballot was received; and

4.      The number of absentee ballots, by county, received from such voters later than 5 p.m. on July 23, 2004, for the July 20 primary election, and for that reason not counted, and the number of such ballots, by county, received from such voters later than 5 p.m. on August 13, 2004, for the August 10 runoff, and for that reason not counted, and the means by which each such ballot was received.

H.      Jurisdiction Retained

The court retains jurisdiction of this action to enter such further relief as may be necessary for the effectuation of the terms of this order, and, on a showing of good cause or by agreement of the parties, to enter such relief as may abate, for the November 2, 2004 federal general election and all federal primary and general elections and runoff elections thereafter, the conditions that gave rise to the UOCAVA violations complained of in the United States' complaint.

SO ORDERED, this _15_ day of July, 2004.

5:47pm

Charles A. Pannell, Jr.
United States District Judge

15

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SARA LARIOS, et al.,

          Plaintiffs,

      versus

CATHY COX, in her official
capacities as Secretary of State of
Georgia and Chair of the State
Election Board,

          Defendant.

CIVIL ACTION

NO. 1:03-CV-693-CAP

## O R D E R

This matter is now before the court on the defendant's motion to alter the

method, timing, and receipt of absentee ballots of uniformed and overseas citizens.

For the reasons set forth below, this motion is GRANTED.

### Factual Background

The Secretary of State has filed this motion in response to concerns raised by

the United States Department of Justice and in an effort to ensure that overseas voters

will have an opportunity to vote and to have their ballots counted in Georgia's federal

and state primary elections, to be held on July 20, 2004, and in any federal and state

primary runoff elections to be conducted on August 10, 2004.

After this court struck down the state's previous state house and senate

reapportionment plans, see Larios v. Cox, 300 F. Supp. 2d 1320 (N.D. Ga. 2004), and

subsequently adopted interim plans for use in the upcoming elections, see Larios v. Cox, 314 F. Supp. 2d 1357 (N.D. Ga. 2004), the court issued an order altering the deadline provided in O.C.G.A. § 21-2-384(a), so that Georgia's counties would be required to issue absentee ballots by 30 days prior to the July 20 primary, rather than the 45 days provided by statute. See Larios v. Cox, Civil Action No. 1:03-CV-693 (N.D. Ga. March 30, 2004).[1] The Secretary of State recently discovered that a number of counties were unable to meet this deadline and that absentee ballots in some counties were sent out as late as July 8, 2004.

As a result of the late filing of absentee ballots, both the Secretary of State and the United States have expressed concerns that overseas voters may not have sufficient time to receive, execute, and return their ballots in time for their votes to be counted in the upcoming primary elections. The United States has also indicated that similar problems are likely to arise with any necessary runoff elections, as there

---

[1] In that same order, the court modified other election deadlines and further provided that:

Any further inquiry or requests for modification or suspension of any such statutes or regulations that are necessary and will assist the Secretary of State in providing the citizens of the State of Georgia a fair, efficient, effective and constitutional election may be reported to this court as necessary. The court stands ready to assist as necessary to provide constitutional, effective, fair and accurate elections.

Order of March 30, 2004, at 4.

2

is only a three-week window between the primary elections and the primary runoff elections.

The State of Georgia is conducting its federal and state primary elections on July 20, 2004, and will conduct any necessary primary runoff elections on August 10, 2004. The federal and state general elections will then be held on November 2, 2004, and any necessary runoff elections will be held on November 23, 2004. Under Georgia law, absentee ballots sent from overseas voters must be received by the close of the polls on the day of the election in order to be counted for either federal or state offices. See O.C.G.A. § 21-2-386(a)(1). Thus, in this case, the deadline for receipt of absentee ballots in the primary elections is 7:00 p.m. on July 20, 2004, and the deadline for receipt of absentee ballots in the primary runoff elections is 7 p.m. on August 10, 2004.

The Secretary of State is particularly concerned with ensuring that the state complies with, or remedies any failure to comply with, the requirements of the Uniformed and Overseas Citizens Absentee Voting Act, 42 U.S.C. § 1973ff et seq. ("UOCAVA"). UOCAVA provides, in relevant part, that each state shall "permit absent uniformed services voters and overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office" and shall "accept and process, with respect to any

3

election for Federal office, any otherwise valid voter registration application and absentee ballot application from an absent uniformed services voter or overseas voter, if the application is received by the appropriate State election official not less than 30 days before the election." 42 U.S.C. § 1973ff-1(a)(1)-(2). Although UOCAVA only pertains to federal offices, the Secretary of State has expressed a concern that overseas voters be afforded the opportunity to cast their votes for state offices as well.

County election officials in the state have received timely requests for absentee ballots from a number of overseas voters who are entitled to vote under UOCAVA. Thus, the relevant issue now is the question of whether those voters have sufficient time in which to receive and cast their ballots for federal and state offices and, if not, what remedial relief the court should order to preserve their rights.

### Legal Analysis

The court concludes that remedial relief is warranted in this instance. The State of Georgia is most likely in violation of UOCAVA, as several counties were not able to send absentee ballots in a timely manner so as to ensure that those protected by the statute would have time to receive them, execute them, and send them back to county election officials before the election deadlines. As a result, many overseas voters will be unable to cast their ballots in time for their votes to be counted in the federal and

4

state primary elections and, because of the short time period between the primary and the primary runoff, will almost certainly be unable to cast their ballots in time for their votes to be counted in the federal and state primary runoff elections.

The court recognizes the importance of preserving citizens' fundamental right to cast their votes in elections and to have those votes counted. However, this concern must be balanced against the need to protect against voter irregularity and the recognition that enhancing all citizens' ability to vote in the November general elections, for which a higher voter turnout is expected, requires that the primary elections be conducted and concluded in a timely manner, leaving ample time for any ballot recounts and for the printing of ballots to be used in the general elections.

### Conclusion

Accordingly, the court hereby GRANTS the defendant's motion to alter the method, timing, and receipt of absentee ballots of uniformed and overseas citizens and ORDERS as follows:

The following relief is ordered to address the delay in issuance of UOCAVA covered absentee ballots[2] for the July 20, 2004 Primary Election for all statewide and

---

[2] A UOCAVA-protected ballot from military personnel, their dependents or other qualified citizens is one where such a voter's absentee ballot application was received by the appropriate State election official not less than 30 days before the election. 42 U.S.C. § 1973ff.

5

state-level offices.    Additionally, the same relief provided herein shall also be applicable as to all UOCAVA-covered overseas voters for the August 10, 2004 Primary Run-Off Election, regardless of when the voter's application is made.

### A.    Facsimile Ballots

The Georgia Secretary of State and the registrars of Georgia's 159 counties are given the authority to send requested ballots to voters by facsimile transmission or email and to accept the returned voter oaths and voted ballots to a single secure facsimile machine that is under the supervision of the Secretary of State.    The Secretary shall promptly place each ballot received via facsimile in a sealed unmarked envelope and place that envelope within a second envelope containing the voter's oath.    The Secretary shall then immediately transmit the ballots by overnight or personal delivery to the election superintendent in the appropriate county for verification and counting with all other absentee ballots.    Transmission of returned voted ballots under this order may be made directly from the voter via facsimile, or may originate as image files sent via electronic mail to the Federal Voting Assistance Program's read-only computer facilities and then relayed to the Secretary via facsimile.

6

In duplicating the received facsimiles of the ballots for purposes of permitting those ballots to be read by the appropriate counting equipment, the county election officials shall use the duplication of ballot procedures and the vote review panel as described in state law in order to assure the integrity of the ballot duplication process. O.C.G.A. § 21-2-483.

Any such ballot returned via facsimile to the Secretary prior to 7:00 p.m. Eastern Daylight Time on July 20, 2004, shall be tabulated and incorporated into the final certified tally of results. Ballots received by the Secretary after 7:00 p.m. on July 20 shall be kept unopened, and preserved in the manner specified by state law. O.C.G.A. § 21-2-386(a) (1).

B.    Use of the Federal Write-In Absentee Ballot

Congress has provided for a write-in absentee ballot form for use by UOCAVA-protected overseas voters desiring to vote in Federal general elections. 42 U.S.C. § 1973ff-2. The criteria for use of this form under UOCAVA are:

1.    The voter must be located overseas;

2.    The voter must have applied for the absentee ballot at least 30 days before the election; and

3.    The voter must not have received the requested ballot.

7

42 U.S.C. § 1973ff-2(a)(1-3).

While Congress has made no provision for the use of this Federal Write-In Absentee ballot (FWAB) in primary elections for state offices, this court recognizes that this form has the notable advantage of wide availability; federal law requires that it be available to UOCAVA-covered overseas voters, and the form is on hand at U.S. military installations and diplomatic facilities worldwide, as well as on the World Wide Web, so that UOCAVA-covered overseas voters have access to the form regardless of their location.

This court therefore orders that the Secretary make this form available via her agency's website, www.sos.state.ga.us, along with information about Statewide and State-level candidates on the July 20 primary ballot for each political party for each office.  These federal write-in ballot forms may then be used by the eligible UOCAVA-protected overseas voters to vote in Georgia's primary election for statewide and state-level offices in the manner described above for other facsimile ballots, or in the manner described below for ballots sent via express mail, and subject to the same time restrictions applicable under this order to ballots sent by each method.

C.   Extending the Deadline for Receipt of Mailed Absentee Ballots

Under Georgia law, in order for an absentee ballot to be properly received and counted, it must be received by the county voter registrar by 7:00 p.m. on Election Day. O.C.G.A. § 21-2-386. Because of the delay in the mailing out of the requested absentee ballots, the deadline for receipt of absentee ballots mailed back to the various Georgia counties shall be extended by three business days, so that absentee ballots from the eligible UOCAVA voters mailed on or before July 20, 2004, and received by the appropriate voter registrars in the issuing counties by 5:00 p.m. Eastern Daylight Time on July 23, 2004, will be deemed valid and will be tabulated and incorporated into the county's final certified results. Ballots received after that date and time will be kept unopened, and preserved in the manner specified by state law. O.C.G.A. § 21-2-386(a)(1).

D.   Other means of Express Delivery

The Secretary shall make available to the eligible UOCAVA-protected overseas voters an account with Federal Express and an account with United Parcel Service (UPS) by which absentee ballots may be returned to her or to the appropriate county election officials by 5:00 p.m. on July 23, 2004, three days after the primary election. The Secretary and the State shall bear the cost of such transmittals, and shall

9

immediately convey these ballots to the appropriate county officials by overnight or personal delivery.  Information regarding access to these accounts will be made available through the Federal Voting Assistance Program and the Office of Georgia Secretary of State.

    E.    <u>Deadlines and Delivery Methods for the Primary Runoff Election</u>

Georgia will conduct its runoff primary elections on August 10, 2004. The court directs that the same methods for transmittal and delivery of UOCAVA-protected overseas voters' absentee ballots shall be utilized by the Secretary and the registrars of Georgia's 159 counties for the Primary Runoff election.  As with the primary election, the court orders that ballots voted prior to the closing of the polls at 7:00 p.m. Eastern Daylight Time on August 10, 2004, may be received and counted by the Secretary of State and the various county registrars if they are received in either of these offices by the close of business at 5:00 p.m. on Friday, August 13, 2004 via U.S. Mail or Overnight delivery.  As previously ordered, all ballots transmitted via facsimile to the Secretary must be received by 7:00 p.m. on the day of the runoff election, August 10, 2004, in order to be accepted and counted.

F.    Notice of Relief to Affected Voters

The defendants shall notify the Director of the Federal Voting Assistance Program ("FVAP") of the United States Department of Defense as soon as this order has been signed and request that the FVAP take such action as is necessary to notify the eligible overseas voters of the relief afforded in this order, including the extension of time for receipt of absentee ballots.  The defendants shall assist the FVAP in whatever way may be reasonably necessary to aid that agency in publicizing this extension of time.

In addition to the publicity described in the preceding paragraph, the defendants shall take the following steps to endeavor to give affected voters notice of the contents of this order:

1.    Issue a press statement for immediate release, posted immediately on the Georgia Secretary of State's Web site, and distributed as broadly and immediately as practicable to national and local wire services, to radio and television broadcast stations within the State, and to daily newspapers of general circulation in the State, describing this order, advising the press of its newsworthiness, and specifically giving members of the press a way to contact

11

senior officials of the Georgia Elections Division for answers to questions.

2.    Prepare and distribute written public service announcements describing this order for broadcast on radio and television networks, including but not limited to the U.S. Armed Forces Network, and announcements describing this order on World Wide Web sites of interest to military and non-military U.S. citizens living abroad.

3.    For the primary runoff election of August 10 only, publish paid advertisements describing this order and the relief afforded therein in at least a single day's issue of all international and domestic editions of the International Herald Tribune, USA Today, Stars & Stripes, the Army Times, and the Navy Times.

4.    For the July 20 primary election only, direct the county voter registrars and election superintendents to make all reasonable efforts, including the use of all available public records and personal knowledge, to locate each UOCAVA-covered overseas voter in their jurisdiction whose absentee ballot was issued on June 23 or later; to notify each such voter individually, by

12

electronic mail, telephone or facsimile, of the relief contained in this order; and to offer electronic or other means faster than traditional mail service of transmitting or re-transmitting an absentee ballot to each such voter.

G.    Jurisdiction Retained

The court retains jurisdiction of this action to enter such further relief as may be necessary for the effectuation of the terms of this order, and, on a showing of good cause or by agreement of the parties, to enter such relief as may abate, for the November 2, 2004 election, the conditions that gave rise to the UOCAVA problems that have been brought to the court's attention by the Secretary of State.

SO ORDERED, this __15__ day of July, 2004.

5:47pm

_____
Charles A. Pannell, Jr.
United States District Judge

13