IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE DUPAGE COUNTY BOARD OF ELECTION COMMISSIONERS, a body politic; KAMI HIERONYMUS, not individually, but as County Clerk of Bureau County; SHARON HOLMES, not individually, but as County Clerk of DeKalb County; RENNETA MICKELSON, not individually, but as County Clerk of Kendall County; NANCY NELSON, not individually, but as County Clerk of Lee County; BARBARA M. LINK, not individually, but as County Clerk of Henry County; JOHN A. CUNNINGHAM, not individually, but as County Clerk of Kane County; and the CITY OF AURORA BOARD OF ELECTION COMMISSIONERS, a body politic, <br><br> Plaintiffs, <br> vs. <br><br> ILLINOIS STATE BOARD OF ELECTIONS, a body politic; and JOHN LAESCH, JOTHAM STEIN, BILL FOSTER, each individually, as certified Democratic candidates for the February 5, 2008, Special Primary Election for the 14th Congressional District; CHRIS LAUZEN and JIM OBERWEIS, each individually, as certified Republican candidates for the February 5, 2008, Special Primary Election for the 14th Congressional District, <br><br> Defendants. | Case No. 08 CV 232 <br><br> Judge Ruben Castillo <br><br> Magistrate Judge Susan E. Cox |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION
FOR HEARING ON DECLARATORY RELIEF**

NOW COME the PLAINTIFFS, the DUPAGE COUNTY BOARD OF ELECTION

COMMISSIONERS (hereinafter referred to as the "DUPAGE COMMISSION"), a body politic;

KAMI HIERONYMUS (hereinafter referred to as "HIERONYMUS"), not individually, but as

County Clerk of Bureau County; SHARON HOLMES (hereinafter referred to as "HOLMES"),

not individually, but as County Clerk of DeKalb County; RENNETA MICKELSON (hereinafter

1

referred to as "MICKELSON"), not individually, but as County Clerk of Kendall County; NANCY NELSON (hereinafter referred to as "NELSON"), not individually, but as County Clerk of Lee County; BARBARA M. LINK (hereinafter referred to as "LINK"), not individually, but as County Clerk of Henry County, by and through their attorneys, PATRICK K. BOND and KEITH E. LETSCHE of BOND, DICKSON & ASSOCIATES, P.C., and state following as their Memorandum in Support of Plaintiff's Emergency Motion for Hearing on Declaratory Relief pursuant to Federal Rule of Civil Procedure 7(b).

## BACKGROUND

PLAINTIFFS are election authorities under the Illinois Election Code, 10 ILCS 5/1-1 *et seq.*, and charged with administering elections within their jurisdictions in accordance with the provisions of that code. (COMPLAINT, ¶¶ 1-8.) PLAINTIFFS' election jurisdictions lie wholly or partially within the 14th Congressional District of Illinois. (COMPLAINT, ¶19.)

On December 3, 2007, the Governor of Illinois issued Writs of Election ("WRITS") to each of the PLAINTIFFS commanding them to hold a Special General Election, and if necessary, a Special Primary Election, for the filling of the vacancy in the office of U.S. Representative in the Illinois 14th Congressional District created by the resignation of the Hon. Dennis Hastert. (*Id.*) The WRITS were issued pursuant to Section 2 A-4 of the Illinois Election Code, 10 ILCS 5/2 A-4, which provides that a vacancy in the office of U.S. Representative shall be filled by a special election pursuant to writs of election issued by the Governor, and Section 25-7 of the Code, 10 ILCS 5/25-7, which requires that the Governor issue writs of election within five (5) days after the occurrence of such vacancy to the election authorities in the district where the vacancy exists, appointing a day within 115 days to hold a special election to fill such vacancy. (COMPLAINT, ¶¶18, 19.) The WRITS ordered that the Special General Election be

held March 8, 2008, and the Special Primary Election on February 5, 2008, which is the same date as the general primary election. (COMPLAINT, ¶¶20, 21.)

On December 28, 2007, Defendant Illinois State Board of Elections ("STATE BOARD") certified Defendants LAESCH, STEIN, and FOSTER for the Democratic nomination and Defendants LAUZEN and OBERWEIS for the Republican nomination to fill the U.S. Representative vacancy from the 14th Congressional District in the March 8, 2008, Special General Election. (COMPLAINT, ¶¶10-14.) Because there is more than one candidate for both the Democratic and Republican party nomination, the election is "contested," pursuant to Section 7-12(b) of the Election Code, 10 ILCS 5/7-12(b). (COMPLAINT, ¶24.) PLAINTIFFS are therefore required pursuant to that section to conduct a Special Primary Election on February 5, 2008, in accordance with the WRIT to determine the each party's nominee. (COMPLAINT, ¶ 24.)

The period between the STATE BOARD'S certification of candidates to the PLAINTIFFS on December 28, 2007, and the February 5, 2008, Special Primary Election is only sixty-seven (67) days. The period between the February 5, 2008, Special Primary Election and the March 8, 2008 General Primary Election is only thirty-two (32) days. These time periods are shorter than those mandated by the Election Code for the following election-related procedures required of PLAINTIFFS and/or the STATE BOARD by the Code:

    1.    Notice of the Special Primary Election, which pursuant to Section 7-61 of the Election Code, 10 ILCS 5/7-61, must be given seventy-two (72) days before the date of the Special Primary Election.

    2.    The final canvass by the STATE BOARD of provisional ballots which, under Section 18 A-15 of the Election Code, 10 ILCS 5/18 A-15, the

STATE BOARD has thirty-one (31) days to complete after receipt of returns by local election authorities, which, in turn under that section have fourteen (14) days to count and validate such ballots and seven (7) days thereafter to complete their final canvass.

      3.      In-person voting for the March 8, 2008, Special General Election at the office of town and municipal clerks provided for in Section 19A-15 of the Election Code, 10 ILCS 5/19A-15, which must begin not less than twenty-two (22) days before such election for voters unable to vote on that day because of physical incapacity, religious observances, election and law enforcement duties or confinement pending acquittal or conviction for a crime.

      4.      Absentee voting by members of the U.S. military personnel pursuant to Sections 20-1 and 20-2 of the Election Code, 10 ILCS 5/20-1 and 20-2, which authorize such voters to make application to local election authorities not less than ten (10) days before an election.

      5.      Absentee voting by United States citizens temporarily residing outside of the United States pursuant to Sections 20-1 and 20-2.1 of the Election Code, 10 ILCS 5/20-1 and 20.2.1, which Sections authorize such voters to make application to local election authorities for an absentee registration and absentee ballot not less than thirty (30) days before the election.

      6.      Absentee voting by non-resident civilians for whom Sections 20-1 and 20-2.2 of the Election Code, 10 ILCS 5/20-1 and 20-2.2, require local election authorities to make available applications not less than ten (10) days before an election.

7.　　Early voting pursuant to Section 19 A-15 of the Election Code, 10 ILCS 5/19 A-15, requires local election authorities to conduct early voting beginning twenty-two (22) days preceding the election through the fifth day prior thereto.

8.　　The making of abstracts of votes for the February 5, 2008, Special Primary Election pursuant to Section 22-1 of the Election Code, 10 ILCS 5/22-1, which allows local election authorities twenty-one (21) days after the election to return and make abstracts of votes for the election.

9.　　Pursuant to Section 16-5.01 (a) of the Election Code, 10 ILCS 5/16-5.01(a), the sixty (60)-day period prior to the date of a general election involving federal officers during which election authorities are required to have sufficient printed ballots for U.S. military personnel and U.S. citizens residing permanently or temporarily outside the country who have applied for absentee voting under Sections 20-1 *et seq.* of the Election Code, 19 ILCS 5/20-1 *et seq.*

10.　　The first day of grace period voting, which pursuant to Sections 4-50, 5-50, and 6-100 of the Election Code, 5 ILCS 5/4-50, 5-50, and 6-100, is the twenty-second (22nd) day before the election.

11.　　The discovery recount time frame pursuant to Section 22-9.1 of the Election Code, 10 ILCS 5/22-9.1, which would require a discovery recount period to begin five (5) days following the certification of the results of the Special Primary Election.

PLAINTIFFS therefore believe that the statutory time periods allowed or required for each of the above-mentioned procedures must of necessity be shortened. Accordingly,

PLAINTIFFS have developed a schedule of abbreviated dates for these procedures. (COMPLAINT, Group Exhibit "B," "Special 14th Congressional District Primary Election Calendar" and "Special Congressional District General Election Calendar.") PLAINTIFFS have agreed to adhere to these schedules for the February 5, 2008, Special Primary Election and the March 8, 2008, Special General Election within their respective jurisdictions in order to assure uniform administration of those elections throughout the 14th Congressional District.

Also, because of the thirty-two (32) day period of time between the February 5, 2008, Special Primary Election and the March 8, 2008, Special General Elections, PLAINTIFFS will not be able to have the voting machine memory cards available for the March 8, 2008, Special Primary Election, unless they are cleared of data from the February 5, 2008, Special Primary Election immediately after the official canvass of the results of that election. (COMPLAINT, ¶. 34). Consequently, PLAINTIFFS propose to convert the data on the memory to a hard copy format for purposes of any recount proceeding, which would allow the memory cards from the Special Primary Election to be cleared and retested for the Special General Election. (COMPLAINT, ¶35 and Group Exhibit "B.")

Further, because the February 5, 2008, Special Primary Election and March 8, 2008, Special General Elections concern election to a federal office, PLAINTIFFS are required by Section 1973 ff-1 of the Uniformed and Overseas Citizens Absentee Voting Act of 1986 ("UOCAVA") to make absentee registration and balloting procedures available to U.S. military personnel and U.S. citizens resident outside the country for these elections. (COMPLAINT, ¶ 38.) The Federal Voter Assistance Program guidelines for UOVACA recommend a period of forty-five (45) days for the mailing of absentee ballots to voters and their return to election authorities. (COMPLAINT, ¶39) Because of the thirty-two (32) day period between February 5,

2008, Special Primary Election and the March 8, 2008, Special General Election, PLAINTIFFS will be unable to provide a printed ballot listing the Democratic and Republican nominees from the February 5, 2008, Special Primary Election to U.S. military personnel and U.S. citizens resident outside the U.S. within the forty-five (45) day period within the Federal Voter Assistance Program guidelines. (COMPLAINT, ¶41.)   To comply with the forty-five (45) day recommended period for the mailing and return of absentee ballots under UOVACA for the March 8, 2008, Special General Election, PLAINTIFFS' propose to use the Special Write-in Absentee Voter's Blank Ballot, authorized for use by Section 16-5.01 (b) of the Illinois Election Code, 10 ILCS 16-5.01(b), where a printed ballot is not available for mailing sixty (60)-days before a general election to U.S. military personnel and U.S. citizens resident outside the country who have filed applications for absentee ballots. (COMPLAINT, ¶ 42.)

Additionally, even though the period between the STATE BOARD'S certification of candidates and the February 5, 2008, Special Primary Election is sixty-seven (67) days, because of the New Year's holiday and the logistics of getting the ballots printed and mailed, some or all of PLAINTIFFS anticipate that they may not be able to mail printed ballots for the Special Primary Election to U.S. military personnel and U.S. citizens resident outside the country within the forty-five (45) day recommended period under the Federal Voter Assistance Program guidelines for UOVACA.

Accordingly, PLAINTIFFS seek a declaratory judgment sanctioning: 1) their abbreviation of the statutory time periods under the Election Code for the election procedures stated above, as set forth in Group Exhibit "B" of the COMPLAINT; 2) conversion of the data from the February 5, 2008, Special Primary Election on the voting machine memory into a hard copy format for purposes of any recount proceeding; 3)  use of the Special Write-in Absentee

Voter's Blank Ballot provided for in Section 16-5.01 (b) of the Illinois Election Code, 10 ILCS 16-5.01(b), to meet the forty-five (45) day recommended period under UOVACA for the mailing and return of absentee ballots by U.S. military personnel and U.S. citizens resident outside the country for the March 8, 2008, special election; and 4) to the extent needed by some or all of the PLAINTIFFS, the use of the Special Write-in Absentee Voter's Blank Ballot provided for in Section 16-5.01 (b) of the Illinois Election Code, 10 ILCS 16-5.01(b), to meet the forty-five (45) day recommended period under UOVACA for the mailing and return of absentee ballots by U.S. military personnel and U.S. citizens resident outside the country for the February 8, 2008, Special Primary Election.

## ARGUMENT

I. **PLAINTIFFS' REQUESTED TIME-PERIOD REDUCTIONS AND OTHER MODIFICATIONS FOR THE FEBRUARY 5th AND MARCH 8th SPECIAL ELECTIONS ARE IN ACCORD WITH ILLINOIS ELECTION LAW AND DO NOT AFFECT THE CONSTITUTIONAL RIGHTS OF VOTERS OR CANDIDATES.**

With respect to the February 5, 2008, Special Primary Election, PLAINTIFFS seek authority to reduce the time periods for: 1) the validation and counting of provisional ballots under Section 18A-15(a) of the Election Code, 10 ILCS 5/18A-15(a), by eleven (11) days; 2) the acceptance and tabulation of absentee ballots under Section 19-8 of the Election Code, 10 ILCS 5/19-8, by eleven (11) days; 3) the canvassing of election results under 10 ILCS 5/18A—15(a), by fifteen (15) days; 4) the transmission of certain absentee ballot information to the STATE BOARD under Sections 19-20 and 20-20 of the Election Code, 10 ILCS 5/19-20 and 20-20, by fifteen (15) days; and 5) the STATE BOARD'S canvass of votes by Section 18A-15(a) of the Election Code, 10 ILCS 5/18A-15(a) by fifteen (15) days. (COMPLAINT, Group Exhibit "B.")

With regard to the March 8, 2008, Special General Election, PLAINTIFFS seek authority to reduce the time periods for: 1) grace voting under Sections 4-50, 5-50, and 6-100 of the Election Code, 10 ILCS 5/4-50, 5-50, and 6-100 by ten (10) days; 2) in-person absentee voting Sections 19-2.1 of the Election Code, 10 ILCS 5/19-2.1, by ten (10) days; and 3) the period for early voting under Section 19A-15(a) of the Election Code, 10 ILCS 5/19A-15(a), by seven (7) days.

PLAINTIFFS also seek authority to transfer voting information from voting machine memory cards to a hard copy format for purposes of any recount proceeding, which would allow the memory cards from the Special Primary Election to be reused for Special General Election.

Decisions of this Court and the state court confirm the PLAINTIFFS' authority to make these modifications. For example, in *People ex rel. Adamowski v. Kerner*, 19 Ill. 2d 506, 167 N.E.2d 555 (1960), the Illinois Supreme Court held that the time periods in the Election Code governing regular elections are subject to modifications in case of special elections. In *Adamowski*, an earlier version of Section 7-5 of the Code (Ill. Rev. Stat. 1959, Chap. 36, Par. 7-5), which required the holding of primary election seven (7) weeks before the general or municipal election, was held not controlling over the schedule in the election writ of the governor setting the primary on the second Tuesday in April and the special election on the first Tuesday after the first Monday in November. Holding that the time period in Section 7-5 of the Election Code had to be construed in *pari materia* with the Code's authorization of the Governor to establish election schedules by issuance of a writ of election, the Court determined that the schedule in the writ did not require observance of the time limitation in Section 7-5. *Id.*, 167 N.E.2d at 559. The Court noted:

>Such construction accords to the legislature a common-sense and practical appreciation of the need for some discretion under the circumstances in order that vacancies in office may be filled expeditiously and economically. In filling vacancies in office by special primary and election *there must be room for an expansion and contraction of the time tables which are observed in the regular election procedures*. [*Id.*] [Emphasis added.]

*Adamowski's* finding of the ability of election authorities to expand and contract the time periods of the Election Code's provisions governing regular elections was applied and further elaborated upon by this Court in *Socialist Workers Party v. Chicago Board of Election Commissioners*, 433 F. Supp. 11 (N.D. Ill. 1977). *Socialist Workers* validated a deadline set for the filing of petitions for independent and new political parties by the Chicago Board of Elections in a special mayoral election, which resulted in a *defacto* eighty-one (81)-day period for obtaining the necessary signatures, where the provisions of the Code set no definite period. *Id.*, at p. 20. The *Adamowski* decision was cited as authority under Illinois law for the expansion and contraction of the periods provided for regular election procedures in the case of special elections. *Id.* at 17.

Concerning the constitutionality of shortened periods in regard to the rights of the political parties, this Court, also in *Socialist Workers*, noted the holding in *Storer v. Brown*, 415 U.S. 724, 94 S. Ct. 1274, 1278 (1974) that, in regard to constitutional challenges concerning election laws, there is "no litmus paper test for separating those restrictions that are valid from those that are invidious under the equal protection clause." It was emphasized that the constitutionality of such modifications must be evaluated upon a situation-by-situation basis. 433 F. Supp. at 17.

It should be noted with regard to previously enumerated time-period reductions sought by PLAINTIFFS for the February 5, 2008, Special Primary Election, that those for the validation and counting of provisional ballots, the acceptance and tabulation of absentee ballots, the

canvassing of election by local election authorities, the transmission of absentee ballot information to the STATE BOARD, and the canvass by the STATE BOARD affect only PLAINTIFFS' internal operations and, therefore, do not impact the rights of voters or candidates. The reduction of the seventy-two (72) day notice period for the Special Primary Election by virtue of the certification of candidates sixty-seven (67) days prior to the election is not sufficiently significant to affect voter's constitutional rights.

Similarly, with regard to the March 8, 2008, Special General Election, the requested reductions in the periods for grace voting, in-person absentee voting, and early voting would still allow voters fourteen (14) days for grace voting and in-person absentee voting and ten (10) days for early voting. Consequently, PLAINTIFFS believe that these reductions also do not affect the constitutional rights of voters or candidates.

Concerning the transfer of special primary voting information from voting machine memory cards to hard copy for recount purposes, there is no statutory provisions requiring that such information be kept in memory card form for recount purposes. Also, PLAINTIFFS are unaware of any constitutional or federal law issues that the transfer procedure itself would raise with respect to the rights of candidates or voters.

PLAINTIFFS therefore are entitled to the entry of an order pursuant to 28 U.S.C. § 2201, and Rules 57 and 65 of the Federal Rules of Civil Procedure, as follows:

A. Declaring as constitutional and in compliance with state and federal election law, the shortened time periods for certain Election Code procedures as required to comply with the issuance of WRITS calling for the elections in this cause, and as set forth in the Special 14th Congressional District Primary Election Calendar and the Special Congressional District General Election Calendar in Group Exhibit "B;" and

B.  Declaring as constitutional and in compliance with state and federal election law the clearance of the February 5, 2008, Special Primary Election data from the memory cards and its conversion to hard copy.

**II.  USE OF THE SPECIAL WRITE-IN BALLOT PROCEDURE UNDER SECTION 16-5.01 (B) OF THE ILLINOIS ELECTION CODE IN LIEU OF A PRINTED BALLOT WILL ALLOW PLAINTIFFS TO COMPLY WITH UOCAVA REQUIREMENTS.**

The abbreviated periods between the December 28, 2007, certifications of candidates and the February 5, 2008 Special Primary Election and the March 8, 2008 General Primary Election create a potential compliance issue for PLAINTIFFS with the recommended balloting period under the Uniformed and Overseas Citizens Absentee Voting Act of 1986 ("UOCAVA"). Section 1973 ff-1 of UOCAVA requires that absentee registration and balloting procedures be made available to U.S. military personnel and U.S. citizens resident outside the country for all general, special, primary and run-off elections involving federal office. The Federal Voter Assistance Program guidelines for UOVACA recommend a period of forty-five (45) day for the mailing of absentee ballots to voters and their return to election authorities.  The thirty-two (32)-day period between the Special Primary Election and Special General Election facially precludes PLAINTIFFS' compliance with the forty-five (45)-day recommended period for the March 8, 2008, Special Primary Election.  Although the sixty-seven (67) day period between the certification of candidates and the Special Primary Election exceeds the recommended period, PLAINTIFFS believe that logistics relating to the process of printing the ballots may create a situation where printed ballots are not available for mailing within the forty-five (45)-day recommended period.

Section 16-5.01 (b) of the Election Code, 10 ILCS 16-5.01(b), authorizes election authorities to use a Special Write-in Absentee Voter's Blank Ballot where a printed ballot is not available for mailing sixty (60) days before an election to U.S. military personnel and U.S. citizens resident outside the country who have filed applications for absentee ballots. Section 16-5.01 (b) expressly authorizes the use of the Special Write-in Absentee Voter's Blank Ballot in general elections but makes no provision for its use in primary elections.

PLAINTIFFS believe that, in conjunction with conditions that would insure it effectiveness, use of the use of the Special Write-in Absentee Voter's Blank Ballot for absentee balloting by U.S. military personnel and U.S. citizens resident outside the country in the March 8, 2008, Special General Election and, if required by exigent circumstances, in the February 5, 2008 Special Primary Election, will enable them to comply with UOCAVA requirements. [1]

PLAINTIFFS therefore are entitled to the entry of an order pursuant to 28 U.S.C. § 2201, and Rules 57 and 65 of the Federal Rules of Civil Procedure:

A.    Declaring that the Special Write-in Absentee Voter's Blank Ballot procedure in Section 16-5.01 (b) of the Illinois Election Code, 10 ILCS 16-5.01(b), complies with the absentee balloting requirements of UOVACA and regulations and guidelines relating to the implementation thereof;

B.    Declaring the use of the said Special Write-in Absentee Voter's Blank Ballot by PLAINTIFFS in the March 8, 2008, Special Primary Election for absentee voting under UOVACA is proper and necessary; and

C.    Declaring the use of the said Special Write-in Absentee Voter's Blank Ballot by PLAINTIFFS in the February 5, 2008, Special Primary Election for absentee voting under UOVACA is proper and necessary.

Respectfully submitted,

DUPAGE COUNTY BOARD OF ELECTION COMMISSIONERS; KAMI HIERONYMUS, Bureau County Clerk; SHARON HOLMES, DeKalb County Clerk; RENNETA MICKELSON, Kendall County Clerk; NANCY NELSON, Lee County Clerk; and BARBARA M. LINK, Henry County Clerk

By: */s/ Patrick K. Bond*
    Patrick K. Bond, One of their Attorneys


Patrick K. Bond (ARDC No. 06193855)
Keith E. Letsche (ARDC No. 06180988)
BOND, DICKSON & ASSOCIATES, P.C.
301 S. County Farm Road, Suite E
Wheaton, IL 60187
(630) 681-1000