IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE DUPAGE COUNTY BOARD OF ELECTION COMMISSIONERS, a body politic; KAMI HIERONYMUS, not individually, but as County Clerk of Bureau County; SHARON  HOLMES, not individually, but as County Clerk of DeKalb County; RENNETA MICKELSON, not individually, but as County Clerk of Kendall County; NANCY NELSON, not individually, but as County Clerk of Lee County; BARBARA M. LINK, not individually, but as County Clerk of Henry County; JOHN A. CUNNINGHAM, not individually, but as County Clerk of Kane County; and the CITY OF AURORA BOARD OF ELECTION COMMISSIONERS, a body politic, | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 08 C 232<br><br>Judge Castillo<br>Magistrate Judge Cox |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | BRIEF FOR THE UNITED STATES AS **AMICUS CURIAE** |
| ILLINOIS STATE BOARD OF ELECTIONS, a body politic; and JOHN LAESCH, JOTHAM STEIN, BILL FOSTER, each individually, as certified Democratic candidates for the February 5, 2008, Special Primary Election for the 14th Congressional District; CHRIS LAUZEN and JIM OBERWEIS, each individually, as certified Republican candidates for the February 5, 2008, Special Primary Election for the 14th Congressional District, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## I.    INTRODUCTION

The United States respectfully submits this brief as amicus curiae to address important

issues presented by this case affecting the right to vote of uniformed servicemembers and

overseas citizens under the Uniformed and Overseas Citizens Absentee Voting Act, 42 U.S.C. §§

1973ff to 1973ff-6 of 1986 ("UOCAVA").  UOCAVA protects the right of military

servicemembers (including their family members) and overseas citizens to vote by absentee ballot in all federal elections conducted by the state in which they were last domiciled. 42 U.S.C. §§ 1973ff-1, 1973ff-6. Plaintiffs in this action seek relief pertaining to the procedures to be used in the February 5, 2008 special primary and the March 8, 2008 special general elections to fill the vacancy in the office of United States Representative for the 14th Congressional District. Certain portions of the declaratory relief requested pertain specifically to UOCAVA, and the United States has a strong interest in ensuring the State is in compliance with UOCAVA for the elections.

We set forth below the general legal standards that states must meet under UOCAVA, and then address the proposals for the March 8, 2008 special general election and the February 5 special primary as they pertain to the rights guaranteed under UOCAVA. In short, if implemented in a timely manner with adequate notice and instructions, the proposal to use the special write-in absentee voter's blank ballot for the March 8 election appears to be a feasible means for achieving compliance with UOCAVA. With regard to the February 5 special primary election, to the extent they are needed, there are several measures Illinois (the "State") and local election authorities could implement to ensure protected voters overseas can cast ballots for the February 5 primary election, including expedited means of transmitting either printed or write-in ballots and/or adjusting the deadline for receiving ballots after the election.

## II.    BACKGROUND

On December 3, 2007, following the resignation of Illinois Congressman Dennis Hastert, Governor Blagojevich issued Writs of Election for holding a special election to fill the vacancy in Illinois' 14th Congressional District ("the District"). The Governor scheduled a special

primary election for February 5, 2008, the same date as the regularly scheduled federal primary

election, and a special general election for March 8, 2008.  On January 10, 2008, Plaintiffs, eight

of the election authorities involved in the conduct of the election in the District, filed this action

naming as Defendants the Illinois State Board of Elections ("SBE") and each of the candidates

certified to run in the special primary election.  Plaintiffs contend that the time periods between

(1) the date the SBE certified the candidates and the special primary and (2) between the special

primary and the special general election do not allow them to perform various election code-

required procedures in a timely manner, including facilitating absentee voting by UOCAVA

citizens.  Plaintiffs seek a declaration that their proposed modifications to the election calendars

for the special elections, and certain other proposed procedures affecting UOCAVA voters, meet

the requirements of state and federal law and are otherwise proper and necessary.  (Compl. ¶¶

36, 46.)

    With regard to UOCAVA voters, Plaintiffs seek approval for use of the special write-in

absentee ballot provided for in the state election code for the March 8 general election, and also,

if necessary, for the February 5, 2008, special primary.  (See Compl. ¶ 46.)  Under Illinois law, if

an election authority is unable to provide printed ballots to UOCAVA voters at least sixty days

prior to the date of a general election for federal officers, it must mail a special write-in absentee

ballot in lieu of the printed ballot.  10 Ill. Comp. Stat. 5/16-5.01(b).  A list of all candidates for

whom nominating papers have been filed and for whom the UOCAVA voter is qualified to vote

must be included with the special write-in absentee ballot.  Id.  The Complaint does not specify

the date by which Plaintiffs would be required to mail the special write-in absentee ballots prior

to the March 8 general election, and does not identify the circumstances under which special

write-in absentee ballots would need to be utilized for the February 5 special primary.  The Complaint also does not specify the procedures to notify UOCAVA voters of the names of the certified winners of the February 5 special primary election.

Plaintiffs also seek approval to modify the State statutory deadlines for accepting absentee ballots, including  UOCAVA ballots.  (Compl. ¶ 33; Pls.' Ex. B.)  Under Illinois law, ballots from absentee voters, including voters covered under UOCAVA, will be counted as long as they are postmarked by midnight on the day preceding the election and received not later than fourteen (14) days after the election.  10 Ill. Comp. Stat. 5/19-8; 10 Ill. Comp. Stat. 5/18A-15.  Under this provision, UOCAVA ballots timely postmarked would be accepted through February 19 for the special primary and through March 22 for the special general election.  Due to the compressed time between the primary election and the March 8 election, Plaintiffs seek approval to shorten the fourteen-day period for receipt of ballots after the February 5 primary to just three (3) days – to February 8.  Id.  For the special general election,  Plaintiffs seek to extend the deadline for accepting absentee ballots to March 29, 2008.  The proposals set out in the Complaint do not include a plan for providing notice to UOCAVA voters of the altered deadlines for accepting and counting ballots for the 2008 special elections.

Based on information supplied to the SBE, it appears likely that all of the election authorities in the District have mailed special primary ballots to UOCAVA voters.  We note, however, that the information provided to the United States to date does not confirm in every instance the dates the ballots were mailed.

### III.    DISCUSSION

#### A.    *UOCAVA Requirements*

UOCAVA requires, *inter alia*, that each state allow qualified United States citizens "to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office."  42 U.S.C. § 1973ff-1.   Citizens protected by UOCAVA include: (1) members of the United States uniformed services and merchant marines; (2) their spouses and dependents; and (3) United States citizens residing outside the United States.  42 U.S.C. § 1973ff-6.[1]  In order to allow absent military and overseas citizens to exercise this right, states must ensure that absentee ballots are mailed sufficiently in advance of a scheduled election so as to allow the receipt, execution, and return of the ballot to the appropriate election official by the state statutory deadline.  This federal right would be meaningless if state election officials mail ballots too late to allow those voters to participate.

Based on United States Postal Service, United States Military Postal Service Agency, and United States Department of State estimates, it is well established that a minimum of thirty days is needed for round trip delivery of international and military mail to overseas locales.  These estimates take into account the fact that some military personnel are stationed in remote areas.[2]

---

[1]  Under UOCAVA, a voter may request (pursuant to the Federal Post Card Application established by the Act) that election officials send an absentee ballot "for each subsequent election for Federal office held in the State through the next 2 regularly scheduled general elections for Federal office."  42 U.S.C. § 1973ff-3(a).  Thus, for the 2008 special elections, election officials are required to provide absentee ballots to all voters for whom such applications were processed since the November 2, 2004 federal general election, and who are otherwise qualified to vote in the special election.

[2]  The U.S. Department of Defense, through its Federal Voting Assistance Program ("FVAP"), is the primary administrator of UOCAVA.  Based on federal postal data and its experience in administering

Federal courts have accepted the thirty-day benchmark for determining violations of UOCAVA. See United States v. Georgia, No. 1:04-cv-2040-CAP (N.D. Ga. July 15, 2004); United States v. Pennsylvania, No. 1:cv-04-830, (M.D. Penn. Apr. 16, 2004), attached as Exhibits 1 and 2, respectively.

### B.    The March 8 Special General Election

For the March 8, 2008 election, the central element of Plaintiffs' proposal as it affects UOCAVA voters is to mail special write-in absentee ballots to their qualified absent military voters and overseas citizens. Plaintiffs explain that this measure is needed because the schedule for canvass of the February 5 special primary, in conjunction with other State deadlines, will delay the availability of the printed ballots well beyond when overseas ballots should be mailed to be timely under State and federal law. The adoption and use of a write-in ballot as a back-up long has been recognized by FVAP and numerous states as a useful mechanism for ensuring that overseas ballots can be sent in a timely manner when regular ballots are delayed due to election contests, litigation, or ballot printing difficulties. See http://www.fvap.gov/services/initiatives.html.[3] If election officials mail the special write-in absentee ballots to all qualified UOCAVA voters sufficiently in advance of the March 8 election to permit UOCOVA voters to receive, cast, and return the ballot by the deadline, they would avert a UOCAVA violation. However, to effectuate this opportunity, the State must ensure voters are provided (1) reasonable opportunities to learn

_____

the Act, FVAP advises that thirty days is the minimum time officials should allow for overseas delivery and return. As Plaintiffs note in the Complaint (Compl. ¶ 39), FVAP *recommends* that states allow forty-five days for the round trip mailings overseas. See http://www.fvap.gov/services/initiatives.html;

[3] Congress provided in UOCAVA for a similar option – the Federal Write-in Ballot – which states must accept in all federal general elections if certain criteria are met. Uniformed servicemembers and overseas citizens can download the federal write-in ballot from the FVAP web site, or obtain it at military bases, embassies, and other locations around the world.

who the candidates are so they may cast a timely and informed write-in vote, and (2) adequate notice and instructions concerning the casting of a timely ballot under the altered timetable Plaintiffs propose.

Accomplishing these objectives seems feasible. First, the special write-in absentee ballots can be – and should be – sent out well in advance of the March 8 election, because officials need not await any of the canvassing or other post-election proceedings. To ensure timeliness and consistency, it would be beneficial if officials agree upon, or the Court orders, a deadline for mailing the special write-in absentee ballots. In setting that date, officials must take into account the Illinois law requirement that absentee ballots must be postmarked by March 7, 2008. Thus, sufficient time must be allowed for voters to receive their ballots, obtain the results of the primary and have the ballot postmarked by March 7, so it can arrive no later than March 29, the deadline proposed in the Complaint (Pls.' Ex. B.) These circumstances permit the State to meet the forty-five-day window recommended by FVAP and sought by Plaintiffs (Compl. ¶ 42), because the proposed deadline for SBE's canvass of the election is February 13 – forty-five days from the ballot counting deadline of March 29. Id.

Second, to notify UOCAVA voters of their options for voting, election officials should post the information about the procedures prominently on the SBE and the local election authorities' web sites, and provide alternative ways for voters without access to the Internet to conveniently contact the SBE or the Plaintiffs to obtain the necessary information. Additionally, the instructions included with the special write-in absentee ballot should set out clearly the methods by which voters can obtain the results of the primary election, and the applicable procedures and deadlines for casting the special write-in absentee ballot. Election officials

should request assistance from FVAP in notifying the eligible UOCAVA voters of the modifications in election procedures, including methods for learning of the names of the candidates on the general election ballot.[4]  The State also should issue a press statement for immediate release concerning these procedures, to be posted immediately on the SBE's web site and distributed to media sources most likely to reach voters in international locations.  The FVAP is available and willing to assist the State in identifying the most practicable means for disseminating notice to the affected UOCAVA voters.

      C.      *The February 5 Special Primary Election*

For the February 5, 2008, special primary election, Plaintiffs propose to move up the last day for counting absentee ballots, including UOCAVA ballots, from February 19 to February 8, just three days after the election.  For the reasons set forth above, this would raise concerns if any UOCAVA special primary ballots have not been mailed in time to allow for their timely receipt and return.  If, in fact, all overseas ballots were mailed to eligible voters within the thirty-day window (e.g., by January 9 if the receipt deadline is February 8), it appears the State would meet UOCAVA requirements with regard to the February 5 primary election.

If, however, there are overseas UOCAVA ballots that have not been mailed at least thirty days before the Plaintiffs' proposed February 8 deadline, further steps must be taken to ensure protected voters are not disenfranchised.  A number of alternatives are available to ensure that

---

[4]  State election officials frequently coordinate with FVAP to devise news releases regarding modifications in election procedures, especially when emergency situations or UOCAVA-related court orders produce an urgent need to notify affected voters worldwide.  These notices are posted on the FVAP web site, and can be immediately transmitted by email to military facilities around the world, State Department offices, and other organizations and outlets likely to reach UOCAVA voters.

UOCAVA voters have sufficient time to receive and transmit their ballots, even under a compressed calendar.

### 1.    *Expedited Transmission of the Ballot*

Election authorities could offset the delayed transmittal of ballots by sending overseas ballots by an appropriate express mail or courier delivery method, and provide pre-paid envelopes to expedite the return of the ballots to election officials.[5]  FVAP provides guidance to states and localities concerning the most effective methods of expedited transmittal to overseas locales when needed.  Postal information compiled by FVAP was transmitted by SBE to Plaintiffs in December.  These alternatives are also available to the State if for any reason the write-in ballots are not sent out sufficiently in advance of the March 8 special general election.

### 2.    *Extension of the Deadline for Accepting Absentee Ballots*

The Court also could approve an extension of the date by which ballots are counted to address any late mailing problems that remain.  Accepting UOCAVA ballots for some period of time after election day (so long as they are postmarked no later than election day) is a common method of remedying or avoiding a UOCAVA violation.  Federal courts have ordered extensions of ballot receipt deadlines as UOCAVA relief on many occasions, most recently in United States v. Georgia, No. 1:04-CV-2040-CAP (N.D. Ga. July 15, 2004) (Ex. 1) (granting TRO and preliminary injunction to remedy late mailing by Georgia counties for primary election of July 20, 2004 and truncated run-off schedule).  See also United States v. Pennsylvania, No. 1:04-CV-0830 (M.D. Pa. Apr. 16, 2004) (Ex. 2 ) (granting TRO and preliminary injunction to remedy late

---

[5]  The Court also could authorize election officials to transmit ballots to voters by telefacsimile or by email, and/or to accept the return of voted ballots by the same means.  See United States v. Georgia, No. 1:04-cv-2040-CAP (N.D. Ga. July 15, 2004) (Ex. 1).

mailing by Pennsylvania counties for primary election of April 27, 2004); <u>United States</u> v.
<u>Pennsylvania</u>, No. 88-0610 (M.D. Pa. Apr. 25, 1988) (Ex. 3) (granting TRO and preliminary
injunction extending by fourteen days the deadline for receipt of absentee ballots from qualified
overseas voters).  Like a number of other states, Illinois provides by statute for acceptance of
ballots from UOCAVA voters after election day, accepting ballots through the fourteenth day
after the election.  10 Ill. Comp. Stat. 5/19-8.  Plaintiffs propose to cut short that window
significantly for the February 5 election (from fourteen to three days) to accommodate other
deadlines.  That truncation of the deadline should not be approved if it will result in
disenfranchising UOCAVA voters.

    We note that even if Plaintiffs are required to accept absentee ballots beyond the
proposed February 8 deadline, it is possible to proceed with minimal disruption to the canvassing
deadlines.  The Court could permit the State to formally certify the election results on the
schedule proposed, provided the number of outstanding UOCAVA ballots could not
mathematically alter the outcome, subject to amendment or recertification of the vote totals to
reflect ballots received through the end of the fourteen-day period, or whatever extended period
may be necessary.  This approach has been adopted or approved by courts as part of a UOCAVA
remedy involving extension of the counting deadlines beyond election day.  <u>See</u> <u>United States</u> v.
<u>Georgia</u>, No. 1:04-cv-2040-CAP (N.D. Ga. July 15, 2004) (Ex. 1); <u>United States</u> v. <u>Oklahoma</u>,
No. Civ-02-1273L (W.D. Okla. Sept. 12, 2002) (Ex. 4).  In fact, guidance issued by the SBE
regarding canvassing procedures for the special primary election on February 5, 2008
contemplated just such a procedure to balance the UOCAVA concerns with the State's
legitimate interest in completing the canvass procedures to accommodate preparations for the

March 8 election.  (See Ex. 5, December 12, 2007 Mem. from Mossman to 14th Cong. Dist.

Election Authorities) (local tabulations could be amended to add ballots that arrive after the

scheduled canvass date but before the fourteenth day after the election).

Thus, to the extent that any election authority has not timely mailed ballots for the

February 5 special primary to eligible UOCAVA voters, the State has a number of avenues for

relief to ensure that the rights of UOCAVA voters are protected.  The options available to the

State and the Court, if relief is necessary, can be reasonably implemented and narrowly tailored

to afford the necessary opportunities to vote in this federal election.

IV.    CONCLUSION

A central issue before the Court is the right of overseas citizens, many of whom are

members of the U.S. Armed Forces deployed on dangerous missions in their country's service, to

participate in elections for federal offices.  While Plaintiffs and the State of Illinois have

important interests in being able to administer a fair and orderly special election under the

compressed timetable they face, ensuring that procedures are in place to prevent

disenfranchisement of  UOCAVA voters is both essential and feasible.  Subject to the additional

protections and implementation measures discussed herein, it appears Plaintiffs' proposal for

using the State write-in ballot is reasonable to address the State's UOCAVA obligations.  In

entering relief, we request that the Court require the parties to fully address the UOCAVA

concerns discussed herein so that all eligible UOCAVA voters will be afforded the opportunity

to vote guaranteed by federal law.

Respectfully submitted,

Date: 14th day of January, 2008

PATRICK J. FITZGERALD                    GRACE CHUNG BECKER
United States Attorney                    Acting Assistant Attorney General

s/Joan Laser                              s/Puja Lakhani
_____          _____
JOAN LASER                               CHRISTOPHER COATES
Assistant United States Attorney         Acting Chief
219 South Dearborn St., 5th Floor        REBECCA J. WERTZ
Chicago, IL 60604                        PUJA LAKHANI
Phone: (312) 353-1857                    Attorneys
                                         Voting Section
                                         950 Pennsylvania Ave., NW
                                         Room NWB-7254
                                         Washington, D.C.  20530
                                         Phone: (202) 514-6331
                                         Fax:    (202) 307-3961
                                         rebecca.wertz@usdoj.gov
                                         puja.lakhani@usdoj.gov