# EXHIBIT "2"

# to United States' Amicus Curiae Brief

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA, :
    Plaintiff :
: CIVIL ACTION NO. 1:CV-04-830
v. :
: (Judge Kane)
THE COMMONWEALTH OF :
PENNSYLVANIA, :
EDWARD G. RENDELL, Governor :
of the Commonwealth of Pennsylvania; :
and PEDRO A. CORTES, Secretary :
of the Commonwealth of Pennsylvania, :
    Defendants :

## ORDER

This matter is before the Court on motion of the Government for Temporary Restraining Order and Preliminary Injunction directing that the Commonwealth of Pennsylvania take steps to ensure that American citizens abroad receive the rights guaranteed by the Uniformed and Overseas Citizens Absentee Voting Act, 42 U.S.C. §§ 1973ff–1973ff-6 ("UOCAVA" or "the Act").

The Act provides, inter alia, that "absentee uniformed services voters" and "overseas voters" (as defined by the Act) (hereinafter "overseas voters") shall be permitted "to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office." 42 U.S.C. § 1793ff-1. Plaintiff seeks injunctive relief under the Act to assure that overseas voters who (a) are qualified to vote in the April 27, 2004, General Primary Election in the Commonwealth of Pennsylvania, and (b) submitted to appropriate county elections officials applications for absentee ballots on or before Monday, March 29, 2004, will be afforded a reasonable opportunity to submit their absentee ballots in a manner that is deemed timely by Pennsylvania officials and to have

those ballots canvassed and counted in accordance with Pennsylvania law for the Federal offices that appear on the absentee voters' General Primary ballot.

As a State, Defendant Commonwealth of Pennsylvania must comply with the duties imposed on the States as required by the Act. Defendant Pedro A. Cortes, the Secretary of the Commonwealth of Pennsylvania, is the administrative head of the Single State Office – the Pennsylvania Department of State – that has been designated by the Commonwealth of Pennsylvania under § 102(b)(1) of the Act (as amended by the Help America Vote Act of 2002). 42 U.S.C. § 1973ff-1. By statute, the Pennsylvania Legislature has assigned the Secretary of the Commonwealth certain responsibilities that are relevant to Pennsylvania's compliance with the Act. However, in its implementation of the Commonwealth of Pennsylvania's responsibilities under the Act, the General Assembly of the Commonwealth by statute has assigned many responsibilities necessary for compliance with the Act to the 67 County Boards of Elections. See generally 25 Pa. Stat. Ann. §§ 3146.1-3146.9 (West 1994 & Supp. 2003) (Article XIII of the Pennsylvania Election Code – relating to voting by qualified absentee electors).

In determining whether to grant a motion seeking emergency injunctive relief, this Court must consider the following four factors: (1) the likelihood that the applicant will prevail on the merits; (2) the extent to which the movant is being irreparably harmed by the complained of conduct; (3) the extent to which the non-moving party will suffer irreparable harm if the preliminary injunction is issued; and (4) whether granting preliminary injunctive relief will be in the public interest. S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 374 (3d Cir. 1992). The moving party bears the burden of demonstrating these factors. Instant Air Freight v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir. 1989). The

2

Court should grant injunctive relief only if the movant produces evidence sufficient to convince the trial judge that all four factors favor preliminary relief. ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir.1987).   Moreover, injunctive relief must be framed to remedy the harm claimed by the party. Hartford-Empire Co. v. United States, 323 U.S. 386, 410 (1945). An injunction must be narrowly tailored to remedy the specific harm shown. Davis v. Romney, 490 F.2d 1360, 1370 (3d Cir. 1974); see also Tuttle v. Arlington City Sch. Bd., 195 F.3d 698, 708 (4th Cir. 1999) ("An injunction should be tailored to restrain no more than what is reasonably required to accomplish its ends . . . . Although injunctive relief should be designed to grant the full relief needed to remedy the injury to the prevailing party, it should not go beyond the extent of the established violation.") (citation omitted).

There can be no doubt that Plaintiff is entitled to injunctive relief. Plaintiff is likely to prevail on the merits of its claim that the Commonwealth is in violation of UOCAVA. Plaintiff has established that county election officials have failed in their duty to timely forward absentee ballots to citizens abroad including the men and women serving our nation's military. Plaintiff established that overseas ballots require on average 30 days for transit to and from the absentee voter. Yet, a survey by the Pennsylvania Department of State's Bureau of Commissions, Elections and Legislation, conducted between April 7 and April 12, 2004 of all 67 county election offices, discloses that many counties have not satisfied their important legal obligations to forward absentee ballots so that they are timely received. Time lines are especially critical in the case of military voters. Based on this, Plaintiff has shown reasonable grounds to believe that this failure constitutes a violation of the Act.

Plaintiff has established the irreparable harm necessary to receive preliminary injunctive relief. Under Pennsylvania law, absentee ballots received after 5:00 P.M. Eastern Time on the Friday before

3

the election may not be counted with respect to any office. 25 Pa. Stat. Ann. § 3146.6(a) (West Supp. 2003). Some overseas voters who applied for an absentee ballot on or before March 29, 2004, and who were not provided an absentee ballot in the time prescribed by Pennsylvania law, see 25 Pa. Stat. Ann. § 3146.5(a) (West 1994), reside or are physically situated at locations so remote from their counties of residence in Pennsylvania that they likely will be unable to return an absentee ballot in time or to cast a vote in this General Primary unless afforded relief from the April 23, 2004, statutory deadline for the receipt of absentee ballots. See 25 Pa. Stat. Ann. § 3146.6(a) (West Supp. 2003).

Further, the public interest favors the grant of an injunction and the expense and burden to Defendants imposed by the relief ordered is far outweighed by the importance of protecting and enforcing the right of every eligible Pennsylvanian to vote. Thus, Plaintiff is entitled to injunctive relief.

Because injunctive relief is an extraordinary remedy, it must be granted sparingly, with the Court exercising its powers only as necessary to remedy the established harm. Hartford-Empire Co., 323 U.S. at 410. It is Plaintiff who bears the burden of establishing entitlement to the relief it seeks. Instant Air Freight, 882 F.2d at 800. The Court is satisfied by the testimony and exhibits that the rights established by the UOCAVA can be enforced with a four prong order: the deadline for the acceptance of absentee ballots will be extended to May 17, 2004, federal write-in ballots will be accepted, the Commonwealth will be required to provide and fund the overnight mailing of overseas absentee ballots, and the Commonwealth will notify the affected voting public of these accommodations.

The Court has considered Plaintiff's argument that the Commonwealth should be required to permit absentee voting by fax or electronic mail. Although counsel for the Government may be correct that these procedures "make sense" in this electronic age, and that they are used safely in forty-nine

4

other states, Plaintiff has not established entitlement to this form of relief. An order requiring these new forms of voting would involve this Court devising and superimposing it's own election scheme on a complex legislatively sanctioned system spread across sixty seven diverse counties. The Government has produced no evidence that this form of extraordinary relief is necessary to ensure the UOCAVA rights of Pennsylvania's overseas voters are protected. Counsel speculated that there may be some military voters for whom even traditional mail is inaccessible. If this is so, the Government has not satisfied its burden of producing evidence to support this contention. Indeed, the Government's sole witness has explained that every military unit is assigned a voting officer charged with protecting the precious right of every man and woman serving our nation in these difficult times.

ACCORDINGLY, IT IS ORDERED THAT:

1. As a remedy to assure the rights of overseas voters who are protected by the Act, the Secretary of the Commonwealth shall take all reasonable steps necessary to direct the County boards of elections to accept absentee ballots cast for federal offices included on the April 27, 2004 primary election by overseas voters as defined by the Act as timely received, as long as they are received by the appropriate county board of elections no later than 5 p.m. on Monday, May 17, 2004, notwithstanding the deadline prescribed by 25 Pa. Stat. Ann. § 3145.6(a).

2. The Secretary of the Commonwealth shall further direct all County boards of elections to accept any vote for federal office in the April 27, 2004 primary election that is received on a federal write-in absentee ballot.

3. To facilitate a timely return of the ballots, the Commonwealth shall provide overseas voters with

the opportunity to return ballots by overnight delivery, the expense of which shall be borne by the Commonwealth.

4. For those absentee ballots received from the overseas voters, the Secretary of the Commonwealth shall take all reasonable steps necessary to direct the County boards of elections to canvass the absentee ballots in accordance with Pennsylvania law and to count the valid votes cast for federal offices only, those determined by the board of elections to be valid absentee ballots under Pennsylvania law.

5. No absentee ballot cast by an absent uniformed services voter or overseas voter shall be valid unless it was cast by the voter no later than 8:00 p.m. eastern daylight time on Tuesday, April 27, 2004. For purposes of determining that an absentee ballot was timely cast, the Secretary of the Commonwealth shall take all reasonable steps necessary to direct the County boards of elections to accept the date affixed to the voter's signed declaration on the absentee ballot envelope prescribed by the Department of State or similar declaration, indicating that the voter had cast his or her absentee ballot on or before the date indicated by the voter in the declaration. The Secretary of the Commonwealth will direct the County boards of elections that proof of mailing or delivery of the completed absentee ballot on or before April 27, 2004, will not be required to demonstrate that the ballot was timely cast.

6. The Defendants shall immediately take all reasonable steps to give notice of the relief in this Order to all qualified overseas voters who have pending requests for absentee ballots in any Pennsylvania County. The efforts to publicize the Order shall include the following:

   a. The Secretary of the Commonwealth shall issue a press statement for immediate release

6

    describing this Order, advising the press of its newsworthiness, and specifically giving members of the press a way to contact the Pennsylvania Department of State's Office of Communications and Press for answers to questions. This press release shall be posted immediately on the Department of State's website, and distributed as broadly and immediately as practicable, to wire services, to radio and television broadcast stations within the Commonwealth, to daily newspapers of general circulation in the Commonwealth, and to daily and non-daily newspapers in the Commonwealth that circulate among minority language readers.

  b. The Commonwealth shall place paid advertisements in multiple overseas publications and other periodicals likely to be accessible to United States military and non-military overseas voters and prepare public service announcements describing this Order for broadcast on radio and television networks, including but not limited to the United States Armed Forces Network.

  c. The Secretary of the Commonwealth will take all reasonable means to direct the County boards of elections to send, by first class U.S. mail, a communication describing this Order and the relief afforded therein to every overseas voter who requested an absentee ballot on or before March 29, 2004, and whose absentee ballot has not yet been received by the county board of elections. The notice shall be mailed to the address supplied by the voter for delivery of the absentee ballot. Any ballot mailed or otherwise transmitted to an overseas voter after the date of this Order shall include the notice described herein.

    d.    The United States and its agencies, including the Federal Voting Assistance Program ("FVAP"), shall take such action as might be necessary and appropriate to assist the Commonwealth with the notification of overseas voters of the extension of time for receipt of such ballots by elections officials of the Commonwealth, including posting announcements on internet sites likely to be visited by affected voters or persons who may have contact with those voters.

6.    Within forty-five (45) days after May 17, 2004, the Secretary of the Commonwealth, in conjunction with the county election officials, shall file a report with the Department of Justice and with the Court which sets forth the following information regarding the federal offices included in the April 27, 2004 primary election:

    a.    The dates on which each of the 67 counties in the Commonwealth began and completed the process of mailing ballots to overseas voters;

    b.    The number of absentee ballots received by each county from overseas voters by 5:00 p.m. on May 17, 2004;

    c.    The number of absentee ballots, by county, received from such overseas voters and counted after the statutory deadline of 5:00 p.m. on April 23, 2004 but prior to the deadline proscribed in this Order;

    d.    The number of absentee ballots, by county, received from such overseas voters later than 5:00 p.m. on May 17, 2004, and for that reason not counted; and

e.  The number of federal write-in absentee ballots received by each county board of elections.

S/Yvette Kane<br>
Yvette Kane<br>
United States District Judge

Date: April __16__, 2004