# EXHIBIT "5"

## to United States' Amicus Curiae Brief

# STATE BOARD OF ELECTIONS

*From the desk of…. Mark Mossman, Director of Election Information*
*Phone: 217-557-0855*
*Email: mmossman@elections.il.gov*

**To:** 14th Congressional District Election Authorities
**Re:** Special Primary Election
**Date:** December 12, 2007

This is a follow-up to some issues raised at the phone conference on Monday, December 10 between SBE staff and the election authorities in the 14th Congressional District concerning the Special Primary Election scheduled for February 5th, 2007.

Q. May a jurisdiction use one tabulator for both the General Primary and Special Primary Elections?

A. Even though these elections are considered as two separate elections that happen to occur on the same day, a jurisdiction may use one tabulator for tabulating the results for both elections, provided the total number of votes cast indicated by party and the number of votes received by each candidate at the Special Primary can be determined separately from other results that may appear on the results tape.

Pursuant to our discussion at Monday's phone conference, a separate ballot and application for the Special Primary should be used.

Q. May referenda appear on the ballot for the Special Primary and Special Elections?

A. No. A referendum would be placed on the General Primary ballot only. Under 10 ILCS 5/2A-1.2; 2A-1.4; 28-2, referenda would not be available at any Special Election unless done as an emergency election with a court order.

Q. May paper ballots be used for a special election?

A. No. Under 10 ILCS 5/24-1.2, there is no authority for the use of paper ballots for a special Congressional primary or election. In addition, Section 301 of HAVA requires voting systems to "provide the voter with the opportunity to change the ballot or correct any error before the ballot is cast and counted." Since this is a federal election, accessible equipment for the disabled community becomes an issue as well.

Q. Is early voting required for special Congressional elections?

A. 10 ILCS 5/19A-15 does not reference special elections. However, it is not strictly prohibited either. The SBE would encourage all election authorities in the 14th Congressional District to consult with one another in deciding whether or not to provide this service for the sake of uniformity throughout the district. I have already received calls from some campaigns as to whether or not early voting would be available for the special election.

Q. May a "special write-in ballot" be used for the Special Congressional Elections?

A. Both 10 ILCS 5/16-5.01 and 42 USC 1973 provide for the use of a "write-in absentee ballot" for uniformed and overseas voters in general elections when federal officers are elected, provided ballots are not available within certain timeframes. The SBE would take the position that the Special Write-in Absentee Voter's Blank Ballot may be utilized for both Special Congressional Elections (Primary and General) provided ballots are not available in sufficient time and this is the only way for uniformed and overseas voters to participate in the special election.

Q. Does grace period registration and voting apply to Special Congressional Elections?

A. Yes. 10 ILCS 5/4-50, 5-50 and 6-100 provide for grace period registration and voting from the close of registration until the 14th day before "a primary or election".

Q. How can we canvass shortly after the February 5th Special Primary when we may receive absentee ballots within the 14 day period after the election that should be tabulated?

A. February 11th was selected as the date for the appropriate canvassing board to canvass the special election results and to transmit them to the SBE. This date was selected for various reasons. Voters, who cast a ballot provisionally, have until the close of business on Thursday, February 7th to present you with additional information as to why his/her provisional ballot should be tabulated. Most absentee ballots will have been tabulated election night except for those that are rejected and those that are not returned until sometime within the 14 day period after the election.*

10 ILCS 5/19-8 (g-5) requires the election authority to notify an absentee voter within 2 days after rejecting his/her absentee ballot providing them with the opportunity to appear before you before the 14th day after the election to present evidence to you supporting their contention that the ballot should be counted.

The SBE suggests that the canvass be conducted on February 11th and that the number of rejected absentees as well as the number of absentees that haven't been returned to your office be provided so as to give some indication as to whether or not the outcome of the race may be affected. After the February 11th canvass, we ask you amend your canvass as necessary to reflect the tabulation of any absentees arriving during the 14th day after the election as well as any rejected absentees that may be counted during this time.

This decision was made to provide the election authorities with as much time as possible in preparing for the Special General on Saturday, March 8th. To that end, the State Board of Elections is planning to meet on February 15th with the intention of certifying the final canvass of results I'm sure this date can be changed if you feel it would be more beneficial to you. Please let me know.*

I am currently working on the Special General Election calendar and will forward it to you for your input when it is completed.

* Dates for conducting the canvass mentioned during the phone conference were February 8th and 13th. It is being proposed that the dates be changed to February 11th and the 15th.

2